STATE OF HAWAII, Plaintiff-Appellee, *v.* PAUL EDWIN DICKSON, Defendant-Appellant

NO. 8666

(CRIMINAL NO. 55708)

NOVEMBER 16, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Defendant Paul Edwin Dickson (Defendant) appeals his conviction[1] of the offenses of: (1) unauthorized control of propelled motor vehicle, Hawaii Revised Statutes (HRS) § 708-836 (1976); (2) theft of credit cards, HRS § 851-3(e) (1976); and (3) theft in the third degree, HRS § 708-833(1) (1976). The dispositive issue in this appeal is whether the record adequately discloses that Defendant knowingly and intelligently waived his constitutional right to counsel and asserted his right to appear *pro se.* We answer no and reverse.

In the early morning of March 13, 1981, two Honolulu police officers on patrol in the Round Top-Tantalus area, observed a vehicle parked on a private road. The officers noted the car's license number and contacted the police dispatcher for any information regarding it. Upon being informed that the car was reported stolen, the officers approached the vehicle and observed Defendant and a female in the car. Defendant and the female were asked to alight and one of the officers questioned Defendant regarding the ownership of the car. Defendant stated that it was his vehicle and that he had previously reported it stolen, but had recently recovered it. The officers again checked with the police dispatcher who confirmed that the vehicle was listed as stolen and that the registered owner was Robert Shimogawa. When the officer asked Defendant for identification, he responded that he had left all of his identification at home but that his name was Robert Shimogawa. A third communication from police dispatch indicated that the registered owner had been contacted and the car was in fact stolen. At that time, Defendant and the female were placed under arrest.

Defendant was again asked for identification and produced a social security card bearing the name of Marcus Smaby. The

---

[1] The Honorable Harold Y. Shintaku presided over the jury trial of Defendant but was incapacitated after the verdict but prior to sentencing. The sentencing was pronounced by the Honorable Marie N. Milks. *See* Rule 25(b), Hawaii Rules of Criminal Procedure.

officer then asked Defendant if all the property within the vehicle belonged to him and he replied yes. Defendant and the female were transported to the police station for booking while the car was towed to a holding lot. An inventory of the contents of the trunk produced credit cards issued to William W. L. Fong, Marcus R. Smaby and Wayne T. Yamashita, wallets, and other items.

Defendant was indicted on May 13, 1981. At the arraignment and plea on June 1, 1981, trial was set for the week of August 10, 1981. The public defender's office was appointed by the court to represent him on June 16, 1981. That office assigned deputy Richard W. Pollack (Pollack) to represent Defendant. Thereafter, the trial was reset for October 6 and 7, 1981. Pollack filed a motion to suppress evidence and statements on August 10, 1981.[2] On September 18, 1981, Pollack filed a motion to allow the public defender's office to withdraw as counsel. In an affidavit accompanying the motion, Pollack stated that Defendant was dissatisfied with Pollack's services and wished to terminate him and proceed *pro se*.

At the hearing on the motion to withdraw on September 21, 1981, the court queried Defendant as to his reasons for terminating Pollack. Defendant replied that he had no confidence in Pollack and that he felt that he would be better off defending himself. Defendant also stated in response to questions by the court that he knew of his constitutional rights, was familiar with the judicial system, and had had previous experiences with the law. However, Defendant requested that he have an advisory attorney to help him in the case. The court informed Defendant that if an attorney could not be found in time either to represent him or act as advisory counsel, the trial date would be continued. Defendant strenuously objected to any continuance on the ground that he had been in jail a long time because he couldn't post bail. The court continued the matter

---

[2] The motion to suppress was based upon the contention that all evidence and statements obtained were the result of an unlawful seizure of the Defendant without the benefit of a warrant.

for one week and requested that Pollack attempt to obtain another deputy public defender for Defendant.

At the continued hearing on September 28, 1981, the public defender's office represented to the court that, under its office policies, it would not provide a deputy to act only as legal advisor for Defendant nor would it provide another deputy to represent him. Defendant was still determined to proceed *pro se*. The court informed him that because of the congested court calendar, if the trial did not go on as scheduled another trial date could not be obtained until after the end of the year. Defendant replied that he understood the situation.

On October 5, 1981, a hearing was held on the motion to suppress evidence and statements, and on a separate motion for dismissal which Defendant himself had filed on September 21, 1981. Defendant appeared *pro se*. The court orally denied both motions and a written order was filed on October 26, 1981.

Jury trial commenced on October 6, 1981,[3] and that afternoon Defendant was found guilty on all counts. The court imposed concurrent sentences on each of the charges on December 7, 1981. On December 28, 1981, Jerry Wilson, Esq., was appointed as private counsel for purposes of prosecuting Defendant's appeal and he filed a notice of appeal on April 16, 1982.[4]

I.

Initially, we note that Defendant has failed to comply with Rule 3(b)(5), Rules of the Supreme Court (RSC), which states in pertinent part:

---

[3] Defendant has not raised any issue relating to Rule 48, Hawaii Rules of Penal Procedure, and his constitutional right to a speedy trial and we decline to address such matter.

[4] The supreme court denied a motion to dismiss the appeal as untimely because Defendant did not have counsel during the period in which the notice of appeal should have been filed.

(b) Opening Brief. Within 60 days after the filing of the record on appeal, the appellant shall file an opening brief, containing in the order here indicated:

\* \* \*

(5) A concise statement of the points on which appellant intends to rely, set forth in separate, numbered paragraphs. Each point shall refer to the alleged error upon which appellant intends to rely and shall show the manner in which it is raised, with a reference to the record where the same may be found.

\* \* \*

Defendant has failed to set forth the alleged errors made by the trial court, the manner in which they were raised below and where the error may be found in the record. The appellate court may refuse to consider any issues not raised in compliance with the requirements of Rule 3(b)(5). *Airgo, Inc. v. Horizon Cargo Transport, Inc.,* 66 Haw. 590, 670 P.2d 1277 (1983); *Makani Development Co. v. Stahl,* 4 Haw. App. 542, 670 P.2d 1284 (1983).

However, we conclude that the record fails to adequately establish that Defendant knowingly and intelligently waived his right to counsel and, therefore, we are constrained to overlook Defendant's dereliction.

II.

The sixth and fourteenth amendments of the United States Constitution guarantee a criminal defendant in a state proceeding the right to counsel. *Reponte v. State,* 57 Haw. 354, 556 P.2d 577 (1976); *State v. Dicks,* 57 Haw. 46, 549 P.2d 727 (1976). Article I, section 14 of the Hawaii State Constitution bestows the same guarantee. *Id.* The right to counsel is an essential component of a fair trial and, absent a knowing and intelligent waiver thereof, no person may be imprisoned for any offense unless he was represented by counsel at trial. *State v. Tarumoto,* 62 Haw. 298, 614 P.2d 397 (1980).

The corollary to the above proposition is that an accused

also has the constitutional right to appear *pro se* and defend himself. *Faretta v. California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L.Ed.2d 562 (1975). Although this right is not specifically enumerated in the United States Constitution, it is necessarily implied by the structure of the sixth amendment.[5] *Id.*

Since the right to counsel is fundamental in our judicial system, where a defendant elects to proceed *pro se,* the record must indicate that he was offered counsel but that he voluntarily, knowingly, and intelligently rejected the offer and waived that right. *Faretta v. California, supra; State v. Tarumoto, supra; Reponte v. State, supra; State v. Dicks, supra; State v. Mickle,* 56 Haw. 23, 525 P.2d 1108 (1974). Courts will not presume acquiescence in the deprivation of such a fundamental right, nor will waiver be presumed from the echoes of a silent record. *State v. Tarumoto, supra; State v. Dicks, supra.*

## A.

The trial court is initially charged with the function of assuring that the defendant's waiver of counsel is made knowingly and intelligently and that the record is complete so as to reflect that waiver. *See Carnley v. Cochran,* 369 U.S. 506, 82 S. Ct. 884, 8 L.Ed.2d 70 (1962); *Hsu v. United States,* 392 A.2d 972 (D.C. App. 1978).

The trial court should first examine the particular facts and circumstances relating to the defendant, *Hsu v. United States, supra; Faretta v. California, supra; Reponte v. State, supra; State v. Dicks, supra,* such as the defendant's age, education, mental capacity, background and experience, and his conduct at the time of the alleged waiver. *State v. Dicks, supra;* 21A Am. Jur. 2d *Criminal Law* § 990 (1982). This is necessary to allow the trial court to determine the level and depth to which its explanation and inquiry must extend. *Id.*

Secondly, in order to fully assure that the defendant is informed of the risks of self-representation, the trial court

---

[5] Hawaii appellate cases decided subsequent to *Faretta v. California, supra,* have not addressed whether the state constitution provides this right to appear *pro se.*

should make him aware of the nature of the charge, *Carvalho v. Olim,* 55 Haw. 336, 519 P.2d 892 (1974); *State v. Hartman,* 134 Vt. 64, 349 A.2d 223 (1975), the elements of the offense, *Carvalho v. Olim, supra; Commonwealth v. Glover,* 247 Pa. Super. 465, 372 A.2d 919 (1977), the pleas and defenses available, *id.,* the punishments which may be imposed, *id., State v. Hartman, supra,* and all other facts essential to a broad understanding of the whole matter. *Hsu v. United States, supra. See also Von Moltke v. Gillies,* 332 U.S. 708, 68 S. Ct. 316, 92 L.Ed 309 (1948); 21A Am. Jur. 2d *Criminal Law* § 992 (1981); 98 A.L.R.3d 13 (1980).

Finally, the trial court should inform the defendant: of his right to counsel, whether private or appointed, *see State v. Quinn,* 565 S.W.2d 665 (Mo. App. 1978); that self-representation is detrimental to himself; that he will be required to follow all technical rules and substantive, procedural, and evidentiary law; that the prosecution will be represented by able counsel; that a disruption of the trial could lead to vacation of the right to self-representation; and that if voluntary self-representation occurs, the defendant may not afterward claim that he had inadequate representation. *Faretta v. California, supra.* Annot., 98 A.L.R.3d 13 (1980).

The trial judge is not required to give the defendant a short course in criminal law and procedure, since a defendant's technical legal knowledge is not relevant to an assessment of his knowing exercise of the right to defend himself. *Hsu v. United States, supra.* However, the record should reflect some interchange on the above matters such as will indicate to a reviewing court that the defendant knew and understood the dangers and disadvantages of self-representation.

Those matters, which we shall call here "specific waiver inquiry" factors, provide a guideline for the trial court in dealing with a demand for waiver of counsel.[6] The record need

---

[6] We direct the attention of the trial judges to the Hawaii Criminal Benchbook, § 2.05 Procedure When Defendant States He Wishes To Proceed Pro Se, for further guidance. We emphasize that although the procedure is merely a guide for the trial judges, and that the constitution does not prescribe a litany or ritual to which trial judges must comply, nonetheless the record must be sufficient to satisfy an appellate court of the validity of a waiver of counsel. *Cf. State v. Dicks, supra.*

not reflect a discussion between the court and a defendant illuminating every such factor. However, where the record fails to reflect that the trial court has sufficiently examined the defendant so as to establish that he is aware of the dangers and disadvantages of self-representation, *Hamilton v. State,* 30 Md. App. 202, 351 A.2d 153 (1976); *State v. Tilley,* 548 S.W.2d 199 (Mo. App. 1977); *Barbour v. State,* 551 S.W.2d 371 (Tex. Crim. 1977), or that the defendant has made a knowing and intelligent waiver, *United States v. Kimmel,* 672 F.2d 720 (9th Cir. 1982); *People v. Lopez,* 71 Cal. App. 3d 568, 138 Cal. Rptr. 36 (4th Dist. 1977); *People v. Fabricant,* 91 Cal. App. 3d 706, 154 Cal. Rptr. 340 (2d Dist. 1979); *Commonwealth v. Tyler,* 468 Pa. 193, 360 A.2d 617 (1976), an appellate court will be hard-pressed to find that a defendant has effectively waived counsel. In such situations, the conviction of a *pro se* criminal defendant is vulnerable to reversal unless the record also contains overwhelming circumstantial evidence indicating that the requirements for a knowing and intelligent waiver have otherwise been met. *Hsu v. United States, supra. See State v. Tarumoto, supra.*

### B.

In an appeal involving the question of whether one has been deprived of the right to counsel, the appellate court must determine from the record whether there was an unequivocal waiver, *State v. Tarumoto, supra;* Annot., 98 A.L.R.3d 13 (1980), which was voluntarily and freely made,[7] *Faretta v. California, supra;* 98 A.L.R.3d 13, *supra,* and based upon an intelligent awareness of the benefits associated with representation by counsel and the dangers and disadvantages of self-representation. *Id.* The record must disclose that the defendant exercised the right to proceed *pro se* with full and complete knowledge of the consequences.

---

[7] The concept of voluntariness does not encompass an indigent's right to have counsel of his own choice. *See* 21A Am. Jur. 2d *Criminal Law* § 989 (1982).

Thus, where the record does not indicate adequate inquiry by the trial court, the appellate court must review the particular facts and circumstances of each *pro se* defendant, *see United States v. Kimmel, supra; State v. Tarumoto, supra,* and must itself determine whether there was a valid waiver. *United States v. Kimmel, supra; State v. Dicks, supra;* 21A Am. Jur. 2d *Criminal Law* § 990 (1982). Where the information in the record indicates that the defendant sufficiently understood the risks associated with self-representation, he will then be deemed to have made a valid waiver of counsel. *See United States ex rel. Konigsberg v. Vincent,* 526 F.2d 131 (2d Cir. 1975), *cert. denied,* 426 U.S. 937, 96 S. Ct. 2652, 49 L.Ed.2d 388 (1976); *United States v. Rosenthal,* 470 F.2d 837 (2d Cir. 1972), *cert. denied,* 412 U.S. 909, 93 S. Ct. 2298, 36 L.Ed.2d 975 (1973).

C.

In reviewing the instant record in the light of the above precepts, we have no doubt that Defendant made a clear and unequivocal demand to represent himself. The record also indicates that Defendant's decision was freely and voluntarily made. He clearly exercised his free will in making the decision.

We hold, however, that the record does not show that the trial judge sufficiently informed Defendant of the dangers and disadvantages of proceeding *pro se,* or made sufficient inquiry into his awareness thereof. Although the record indicates that the court and Defendant discussed the latter's right to counsel and his familiarity with "the court system," the record does not show that the court made an adequate "specific waiver inquiry" to satisfy the requirement that the Defendant be sufficiently made aware of the pitfalls of the proceeding *pro se* so as to indicate a knowing and intelligent waiver.

We also hold that there is insufficient circumstantial evidence in the record to convince this court that Defendant actually knew what he was doing. Our review of the facts and circumstances revealed by the record does indicate that Defendant has had many contacts with the legal system; however, there is nothing to show that he had previously represented himself or that he was familiar with a felony jury trial

situation, or that he was aware of the pitfalls of proceeding *pro se.* We, therefore, find that the record does not indicate that Defendant made a knowing and intelligent waiver of counsel.

## D.

Finally, we must resolve the question of what relief may be accorded a *pro se* defendant upon a trial court's failure to adequately warn a defendant of the dangers and disadvantages of self-representation. There are two bodies of opinion in this regard. The first is that since the assistance of counsel is such a basic constitutional right and is essential to a fair trial, an infraction of that right can never be treated as harmless error and reversal is automatic. *See Hsu v. United States, supra.* The second, which we believe to be more appropriate, is that, notwithstanding the error of the trial judge to adequately inform the defendant of the dangers and disadvantages of self-representation, where there is no reasonable possibility that the error affected the outcome of the trial, the error is considered harmless beyond a reasonable doubt and the conviction will stand. *See People v. Cervantes,* 87 Cal. App. 3d 281, 150 Cal. Rptr. 819 (2d Dist. 1978). *Cf. State v. Jenkins,* 1 Haw. App. 430, 620 P.2d 263 (1980). However, the error is presumed to be prejudicial and the State must rebut that presumption and prove that the error was harmless beyond a reasonable doubt. *State v. Antone,* 62 Haw. 346, 615 P.2d 101 (1980); *State v. Caraballo,* 62 Haw. 309, 615 P.2d 91 (1980).

We prefer and adopt the latter standard because it applies the doctrine of "invited error" or "estoppel" to a defendant who has unequivocally demanded to proceed *pro se,* so as to preclude him from raising on appeal the issue of the trial court's failure to satisfy the requirements necessary to a valid waiver of counsel. *See People v. Cervantes, supra.* Moreover, a standard of review short of automatic reversal, will inject fairness into the defendant's game of "waive the lawyer." *Id.* To require an automatic reversal of conviction in situations where the defendant's case is a "lost cause" would not be compatible with the maintenance of an economical and efficient judicial system.

In reviewing the instant case, we cannot say that the error

by the trial court in failing to inform Defendant of the dangers and disadvantages of self-representation was harmless beyond a reasonable doubt.

The record indicates that certain issues relating to *Miranda* warnings and search and seizure were never raised in the trial court. For example, after Defendant was arrested, the police continued to question him about ownership of the car and its contents without warning him of his constitutional rights. Also, evidence was retrieved from the trunk of the car without a search warrant. Although we make no determination as to the merits of those possible issues, a disposition favorable to Defendant on one or more of them might have resulted in a dismissal of at least some of the charges, if not all. Therefore, we find that the State has not proved that the trial court's error was harmless beyond a reasonable doubt. Thus, Defendant's conviction must be overturned.[8]

Reversed and remanded for further proceedings consistent with this opinion.

*Jerry I. Wilson* for defendant-appellant.

*Shirley Smith,* Deputy Prosecuting Attorney, City and County of Honolulu, for plaintiff-appellee.

---

[8] Defendant has also raised the issue of whether the court erred in not appointing him a "standby" or "advisory" counsel. *See Faretta v. California, supra; Wiggens v. Estelle,* 681 F.2d 266 (5th Cir. 1982), *cert. granted,* ___ U.S. ___, 103 S. Ct. 1182, 75 L.Ed.2d 430 (1983). However, the appointment of "standby" or "advisory" counsel is not a right of either constitutional or statutory dimensions, *United States v. Daniels,* 572 F.2d 535 (5th Cir. 1978); *United States v. Trapnell,* 638 F.2d 1016 (7th Cir. 1980); *United States v. Olson,* 576 F.2d 1267 (8th Cir.), *cert. denied,* 439 U.S. 896, 99 S. Ct. 256, 58 L.Ed.2d 242 (1978); *United States v. Halbert,* 640 F.2d 1000 (9th Cir. 1981); *United States v. Gigax,* 605 F.2d 507 (10th Cir. 1979), and the disposition of this appeal does not require us to discuss that issue.